UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

IN RE:

ARDEX INTERNATIONAL COMPANY

Debtor.

Hearing Date: May 29, 2024
Hearing Time: 9:15 a.m.
Hearing Location: Albany

Chapter 7
Case No. 22-10312

**AFFIRMATION IN OPPOSITION TO MOTION CONFIRMING COMPLIANCE WITH BANKRUPTCY COURT ORDER DATED JANUARY 13, 2023 DOCKET 61 PURSUANT TO 11 U.S.C. SECTION 105(a)**

STATE OF NEW YORK   )
                    ) SS.:
COUNTY OF ALBANY    )

TERRANCE P. CHRISTENSON, an attorney duly admitted to practice law before the Courts of the State of New York and Northern District of New York, hereby affirms the following to be true under the penalties of perjury affirms under penalty of perjury:

1. I am senior counsel to the law firm Cooper Erving & Savage LLP, the attorneys for Sahag Sukljian in the action entitled "NUBAR SUKLJIAN v. SAHAG SUKLJIAN and ARDEX INTERNATIONAL CO." Index No.2019-263124, presently pending in New York Supreme Court, Rensselaer County, Hon. Adam Silverman presiding.

2. Sahag, individually and as a co-partner in Ardex International Company, has an interest in the Property and surplus proceeds from its sale which will be affected by this Motion.

3. I am familiar with the facts and circumstances set forth in this affirmation.

4. I submit this affirmation in opposition to the Motion by the City of Troy (the "City") for an order confirming compliance with this Court's previous Order dated January 13, 2023

1

(the "Motion") as it relates to the proposed sale of the real property commonly referred to as 744 Pawling Avenue, Troy, NY 12180 (the "Property")

5. It is respectfully submitted the City of Troy's a marketing and proposed contract do not comply with both the explicit and implicit terms of the Order.

6. The relevant language of the Order granting the lift stay on the Property is:

> ORDERED that upon the City of Troy, New York obtaining title to any of the aforementioned parcels, the City of troy, New York will use a good faith effort to market said parcels for sale and proceed with reasonable speed, and it further
>
> ORDERED that upon the event that net surplus monies remain after satisfying sums owed City of Troy including (a) payment of real property liens with interest and penalties and (b) payment of the costs, legal fees and broker's fees if any, incurred in bringing the in rem action and marketing and selling the aforementioned parcels; said net surplus will be turned over to the bankruptcy estate for administration after said real property has been sold.

7. This Order was granted on recommendation and consent of the Bankruptcy Trustee and my client in considering the fact that there were "all cash" offers for the Property in the bankruptcy proceeding in excess of $1,000,000 and in view of the recent decision *Gunsalas v. County of Ontario* 37 F 4th 859 (cert denied by the US Supreme Court on November 21, 2022. Docket No 22-294)  That decision involving a New York in rem foreclosure sale applied the bankruptcy law requirements under Section 548 and its "reasonably equivalent value" standard, and held the debtor's bankruptcy estate to be entitled to surplus proceeds received by the foreclosing municipality.  (The principle of debtor/owner's right to surplus money in "in rem" real property foreclosures was also upheld by the US Supreme Court in *Tyler v Hennepin County* 598 U.S. 63; 143 S. Ct. 1369 decided in May, 2023. See also, Judge Hurd's March 12 ,2024 decision *Polizzi v. County of Schoharie*, 2024 U.S. District Court -Northern District of NY - LEXIS 42848)

2

8. At the time of the lift stay motion the Property was valued at over $1,000,000 and Troy's tax lien was considerably less in the approximate amount of $550,000. Concern was raised by the Trustee and my client about the fear that the City of Troy would only be interested in satisfying its tax lien and related sale expenses and not be motivated to obtain the reasonable value of the Property. Hence, the language placed in this Court's Order.

9. On March 23, 2023 a deed was entered pursuant Judge Sobel's foreclosure order dated February 22, 2023 in the two separate Troy pending actions (I believe the parties all at that time believed that these included all six parcels which were specifically listed in the bankruptcy court lift stay Order)

10. The hiring of a broker to market the Property dragged out many months. The Trustee and I made several inquiries regarding as why a broker had no been retained. I and the Trustee had several conversations and email exchanges with Daniel Vincelette, the City of Troy's real property tax attorney. In early May, 2023, I learned that the City was going to hire Heer Realty as its broker. On May 9, 2023. I called Dan Vincelette to advise him of what I believed to be a conflict of interest of Heer Realty, namely, that they had listed the Property in 2019 at the behest of Nubar Sukljian without my client's (his partner's) consent. This generated the partner litigation which is still pending. I followed up with an email expressing my concerns to Mr. Vincelette and the Trustee. A copy of the email is attached as Exhibit 1.

11. For the next several months, the Trustee and I continued to inquire as to whether a broker had been hired and when the property was to be listed. By email to me from the Trustee dated October 2, 2023, which included a copy of an email dated September 28,

2923 from Richard Morrissey (the Troy Corporation Counsel) I learned that the property was listed for sale on September 29, 2023 and the broker was Heer Realty. A copy of the mail trail from February to October 2, 2024 is attached as Exhibit 2. The property was listed on CIREB and Loopnet at price of $1.5 million. (Inexplicably, the property was never listed on Heer Realty's own website)

12. The CIREB and Loopnet listings (Exhibit A to the Heer Affidavit) do not contain any restrictions on the sale (e.g. there is no indication that the Property is to be sold "as is, where is," without the opportunity to conduct any inspections, and that only a quitclaim deed with no warranty of title or condition would be given.) In addition, the property was listed as 11.51 acres with the implication that the entire Property was for sale.

13. As the Heer affidavit describes 5 offers were received ranging from $950,000 to $1,250,000, with three of the five in excess of 1 million dollars. As is customary for offers by potential developers, they contained reasonable contingencies for environmental inspections, due diligence, and the like, as well as transfer by warranty deed. Indeed, this was property owned by the City of Troy and was restricted only by the conditions Bankruptcy Court Order.

14. On October 13, 2023, Trustee O'Connor forwarded to me copies of three proposed contracts which had been emailed to him by Dean Heer. (Doo Young Pai, Valente and Mulinio). Subsequently, I spoke with Mr. O'Connor and indicated that I felt the Valente offer of $1,150,000 was the best and most independent by a reputable developer. The offer was "all cash" with only an environmental assessment contingency and called for a warranty deed. This offer was similar to what was originally proposed in Bankruptcy Court in August 2022 and recommended for approval by him as Trustee and agreed to by

4

my client. As the Court will recall that offer was stymied by Nubar Sukljain who reneged on the previous oral approval by his then attorney.

15. According to the Heer affidavit, after all the offers were received, on October 23, 2023 the City of Troy, for the first time, indicated to Dean Heer that all the offers were unacceptable because the City would only sell the property "as is, where is" and transfer title only by quitclaim deed, and no contingencies or inspections, environmental or otherwise would be accepted. Apparently, on November 14, 2023 the broker for Valente indicated it would not remove its environmental inspection contingency and wanted the City to give a warranty deed. (I would note that recently on March 6, 2024 I spoke directly with Roderick Valente the principal of Valente Development Group who indicated that Valente would still be interested in purchasing the Property for $1,150,00 if the environmental contingency was met and they got "good title")

16. In late November, 2023, I was advised by Trustee O'Connor that 2 small vacant parcels were not part of the foreclosure order, despite having been specifically listed in the bankruptcy Court's lift stay Order, Apparently, these parcels consisting of .77 of an acre and having a total assessed value of $48,500 had been redeemed in 2020 by payment of the then due taxes, It should be noted that no taxes have been paid on these parcels from 2020 to present, and recently, on February 14,2024, the City commenced an in rem foreclosure proceeding based on the 4 years nonpayment of real property taxes. The parties have until June 21, 2024 to redeem or contest or Troy will obtain title. (See attached Exhibit 3)

17. As the Court is aware, upon learning of this, the Trustee, by motion approved by the Court by Order dated January 11, 2024, abandoned his interest these parcels. However,

5

since these parcels were part of the previous lift stay Order, they remain subject conditions of that Order and the US Supreme Court decisions cited in this affirmation.

18. On January 19, 2024, I was shocked to learn that on January 18 the Troy City Council had approved the sale of the Property to David Mulinio for the sum of $762,000 or $438,000 below his original offer of 1,200,000.

19. In the Corporation Counsel memorandum in support, it said "it covers most of the City's tax and other losses (including the realtor's commission)" (See City's Exhibit E to Heer Affidavit) This, of course, means that only the City's interest is protected and not the rights of the Trustee as set forth in the lift stay Order.

20. The Mulinio contract is explicitly conditioned on approval by the Bankruptcy Court. It is respectfully submitted that such approval not be given. The entire course of events leads to the conclusion the purchase price is grossly inadequate given the value of the Property. The Bankruptcy Court lift stay Order, and caselaw on which the Order's conditions are based, clearly recognize the Trustee's interest in a surplus realized from a City of Troy sale. The marketing and speed with which it occurred were flawed and did not live up to the "good faith effort" which the Order required.

21. The time between the obtaining of title and listing was over six months. When the Property was finally listed on September 29, 2023, it was done as one would list a potentially developable property. There were no "as is, where is," "no inspections" "no ability to do an environmental assessment" restrictions in the listing. It also believed that Dean Heer thought his company was marketing the totality of the Property. Hence, it received several offers of well over $1,000,000 reflecting the actual market value of the Property. This also consistent with the offers made in the bankruptcy proceeding.

22. The actions of the Troy Corporation Counsel in late October 2023 undercut the marketing process and changed the conditions of sale. These conditions may have been acceptable under a strict in rem foreclosure a pre-*Gunsalus* rationale where the municipality wound up owning the Property an extinguishing all the prior owner's rights no matter what its actual value; thus, having no duty to prior owner (in this case the Trustee). However, both as result of *Gunsalas* and its progeny and the explicit language of the lift stay Order, the City of Troy had a duty to maximize the sale price not only for its benefit, but also for the bankruptcy estate.

23. The Valente offer of $1,150,000 made through Heer (Heer affidavit Exhibit B) contained a contingency for an environmental assessment of the property. This was to be at Valente's sole expense and was only for a brief period from October 11, 2023 to November 30, 2023, after which it would be waived and null and void. This is a clause that is standard for real property developers. It was unreasonable for the City after the offer to reject the contingency and not allow any prospective buyer to inspect the Property or have the opportunity to do an environmental assessment. Similarly, there is no statutory requirement the City only give a quitclaim deed. In any event, any prospective real estate developer would, of course, do a title search to assure good title.

24. The Valente contract with the Trustee for $1,050,000 dated August 16, 2022 previously presented to the Bankruptcy Court and recommended by the Trustee for approval contained a 60-day due diligence clause allowing inspections and tests at the purchaser's expense, and provided for a warranty deed with a title search and survey to be done at purchaser's expense. (See attached Exhibit 4) These were standard clauses for a developer's contract. As the Court will recall, the motion to approve this contract was

withdrawn by the Trustee due to Nubar Sukljian's reneging on his prior attorney's oral indication that Nubar would not object to the sale. If this sale had gone through a substantial surplus would have been received by the Trustee as the unpaid real property taxes, interest and penalties were considerably lower than when the City took title in March 2023 after the lift stay.

25. All this being said, the point is that the City's unnecessary restrictive conditions imposed after the listing and receipt of proposed contracts diminished the Property's value to the detriment of the Trustee's interest. In short, under the contact proposed the City receives the benefit of recouping its back taxes with interest and penalties, and the Trustee receives nothing.

26. The City's handling of the issue relating to the two small vacant lots also unnecessarily diminishes the Property value. These lots were included in the Court's lift stay Order and were at that time (and are now) seriously property tax delinquent. While these parcels were redeemed in 2020 in the proceeding commenced that year for delinquent taxes for the years 2016-2019, no real property taxes have on these parcels have been paid since that time. As previously indicated, The City is now foreclosing on these parcels with a return day of June 21, 2024. It makes absolute sense to see if the City obtains title so that the Property can be marketed in its entirety, thus producing the true market value and a significant surplus. If the Court were to approve the proposed contract before the Court at the $762,000 price, and then the City obtained title to the two vacant parcels early this summer, there would be no market for these parcels as they would only have value to the proposed purchaser. The piece-meal sale of the Property makes no economic sense.

27. It is respectfully submitted that the Court should not approve this proposed sale. The marketing process was flawed from the start resulting in a contract offer initially for $1,200,000 being reduced to the same buyer to $762,000, a reduction, a reduction of $438,000. The marketing does not meet the good faith effort with reasonable speed standard as set forth in the Bankruptcy Court Order. The Property should be relisted and allow reasonable contingencies (such as environmental assessment and marketable title). The City should wait until after June 21, 2024, so that if the current foreclosure proceeding is not contested and there is no redemption, title to the two small vacant parcels will vest in the City; and thus, the Property can be marketed as a whole. This way the Trustee's interest in a surplus can be protected and the Lift stay Order can be complied with in accordance with the prevailing US Supreme Court decisions.

DATED: May 21, 2024

_____
Terrance P. Christenson, Esq.
Cooper Erving & Savage LLP
Attorneys for Sahag Sukljian
20 Corporate Woods Blvd.
Suite 501
Albany, New York 12211
(518) 449-3900

Edward R, Marinstein, Esq.
Marinstein & Marinstein, Esq. PLLC
Attorneys for Creditor City of Troy
22 First Street, PO Box 155

9

Troy, New York 12181

Michael Jude O' Connor, Esq
Chapter 7 Trustee
O' Connor, O'Connor, Bresee & First, P.C.
20 Corporate Boulevard, Fourth Floor
Albany, New York 12211

Office of the United States Trustee
Leo W. O'Brien Federal Building
11A Clinton Avenue Room 620
Albany, New York 12207

Christian H. Dribusch, Esq.
Attorney for Debtor
1001 Glaz Street
East Greenbush, New York 12061

Michael Boyle, Esq.
Attorney for Nubar Sukljian
62 2nd Street
Troy, New York 12180