UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

IN RE:

ARDEX INTERNATIONAL COMPANY

Debtor.

Original Hearing Date: May 29, 2024
Hearing Time: 9:15 a.m.
Hearing Location: Albany

Chapter 7
Case No. 22-10312

**ARGEED STIPULATION OF FACTS CONCERNING THE MOTION CONFIRMING COMPLIANCE WITH BANKRUPTCY COURT ORDER DATED JANUARY 13, 2023 DOCKET 61 PURSUANT TO 11 U.S.C. SECTION 105(a)**

EDWARD R. MARINSTEIN, as attorney for Movant City of Troy, New York, ("Troy" or the "City") and TERRANCE P. CHRISTENSON as attorney for Objecting Party Sahag Sukljan hereby stipulate as to the following facts relative to the above-described Motion currently before this Court.

1. On April 8, 2022 debtor filed a Chapter 7 in bankruptcy in the Northern District of New York.

2. The principals of debtor Nubar Sukljian and Sahag Sukljian had and have irreconcilable differences which resulted in an action pending in Rensselaer County Supreme Court. Said action has been pending since 2019. During the period the principals were in dispute, property taxes going back to 2017 were not paid to Troy. On the date of the bankruptcy filing, debtor owed Troy, a secured creditor approximately $546,000 in property taxes plus interest at 36% per annum from May 1, 2022. An "in rem" foreclosure proceeding was pending on the six parcels at the time bankruptcy was filed. The addresses of the six parcels are 744 Pawling Avenue,

768 Pawling Avenue, 756 Pawling Avenue, 762 Pawling Avenue, Pawling Avenue (Tax Map No. 112.83-3-4) and Pawling Avenue (Tax Map No. 112.84-3- 4). (the "Property") Said addresses are the former site of a perfume factory.

3. In July, 2022, with the Court's approval the Trustee listed the Property for sale with a broker resulting in an offer (the Valente offer) for $1,050,000. Based on how the properties were owned; to clear title, debtor and the two principals of debtor had to agree to sign a deed. The Trustee believed all parties had orally agreed to the sale.

4. When the Trustee then moved to have the Court approve the proposed contract, all parties agreed to the sale, except partner Nubar Sukljian, who filed an objection. Because The Trustee could not get Nubar's consent, the Trustee withdrew the motion.

5. On or about December 14, 2022, the City of Troy moved to vacate the stay to continue the "in rem" proceeding to clear title and to sell the parcels to satisfy the delinquent taxes with surplus monies going to the Chapter 7 Trustee.

6. At the time of the lift stay motion the Property was valued at over $1,000,000 (see e.g., the Valente offer) and Troy's tax lien was considerably less in the approximate amount of $613,000. Concern was raised by Attorney Christenson about the fear that the City of Troy would only be interested in satisfying its tax lien and related sale expenses and not be motivated to obtain the reasonable value of the Property.

7. The parties agreed to the lift stay on the specific agreement that Troy would attempt to obtain a surplus to go to the Trustee, to protect the parties' equity interests in the Property.

Based on this, on January 13, 2023 the Court issued an order which in relevant part stated it is:

> ORDERED that upon the City of Troy, New York obtaining title to any of the aforementioned parcels, the City of Troy, New York will use a good faith effort to market said parcels for sale and proceed with reasonable speed, and it further
>
> ORDERED that upon the event that net surplus monies remain after satisfying all sums owed City of Troy including (a) payment of real property liens with interest and penalties and (b) payment of the costs, legal fees and broker's fees if any, incurred in bringing the in rem action and marketing and selling the aforementioned parcels; said net surplus will be turned over to the bankruptcy estate for administration after said real property has been sold.

8. Nubar Sukljian made a motion to reconsider the granting motion which was denied on February 15, 2023.

9. On March 23, 2023, Troy, by deed, obtained title to four parcels being 744 Pawling Avenue; 768 Pawling Avenue; 756 Pawling Avenue and 762 Pawling Avenue Troy, New York through the "in-rem" process. (Two small vacant parcels that have an address of Pawling Avenue being tax map numbers 112.83-3-4 and 112.84-3-4 had been redeemed several years prior by the debtor). In 2022, these two parcels had a combined assessed value of $46,500 which implied a full value of $61,184 based on the 2022 equalization rate of 76%. These lots were not contiguous, being separated by another vacant parcel 112.83-3-5 which was not redeemed, and may affect value.

10. Several months passed, and several inquiries were made regarding why Troy had not begun to market the Property. On or about September 29, 2023, 6 months after the Troy had obtained title, Heer Realty finalized a brokerage contract with the City. The listing agreement with the City of Troy only showed 744 Pawling Avenue with no tax map numbers.

11. The property was the listed for sale on CIREB and Loopnet at price of $1.5 million. The property was never listed on Heer Realty's own website. The CIREB and

Loopnet listings (Exhibit A to the Heer Affidavit) do not contain any restrictions on the sale (e.g. there is no indication that the Property is to be sold "as is, where is," without the opportunity to conduct any inspections, and that only a quitclaim deed with no warranty of title or condition would be given.) There was no indication of the exclusion of the two vacant parcels which were part of the assemblage Property. The Property was shown as such with approximately 20 showings.

12. Five written offers were received ranging from $950,000 to $1,250,000, with three of the five in excess of one million dollars. Four of the five were for 4 parcels. The two major competing offers with actual proposed contracts were: (1) David Mulinio and/or assignors (October 12, 2023) for $1,200,000 for 4 listed parcels totaling 11.51 acres, with no mortgage contingency and transfer by warranty deed and; (2) Valente Building Group LLC (October 11, 2023) for $1,150,000 for 4 listed parcels, with no mortgage contingency, with allowed use being an apartment building with inspection and environmental assessment contingencies and transfer by warranty deed. Both proposed contracts contained explicit language that the contract was contingent on bankruptcy court approval. The Valente offer was substantially the same (except for increasing the price from $1,050,000 to $1,150,000) as had been previously presented to the Trustee and recommended by him to the Court for approval.

13. The Trustee became aware of these offers and on or about October 13, 2023, and forwarded to Terrance Christenson, the attorney for Sahag Sukljian, copies of the Valente, Mulinino and Do Young Pai proposed contracts. While the purchase price amounts of the Valente and Mulinio contracts appeared to be in line with the Property's value, Attorney Christenson urged acceptance of the Valente offer as being

the best from a reputable developer. He advised the Trustee and the City's bankruptcy attorney of his position.

14. On October 23, 2023, the broker Dean Heer had a meeting with City of Troy Corporation Counsel Richard Morrissey and Troy City Assessor, Sharon Martin, they reviewed the offers submitted. Mr. Heer was told that offers would only be acceptable if (a) the purchaser waives inspections. (b) the property is being sold "as is, where is" and (c) transfer will be by Quit Claim Deed, that real property the City of Troy receives as the result of an in rem is only transferred by Quit Claim Deed. Corporation Counsel Morrissey relied on a City of Troy local Ordinance for his position. These conditions were at variance with the manner in which the Property was offered for sale in the marketing listings. The Trustee and attorneys for the equity holders were not advised of these new added restrictions.

15. In addition, four of the five offers made assumed that the proposals were for the entire assemblage. It was then learned by the proposed purchasers that only four of the six parcels constituting the entire assemblage were to be conveyed. The two parcels excluded consisted of vacant land totaling .77 of an acre with an assessed full market value of $61,184. (2022 76% equalization rate)

16. The broker advised Valente and Mulino of the new conditions which had not been previously disclosed. Valente advised that he wanted an environmental inspection and a warranty deed. The City did not agree. Mulinio said he would accept the conditions only if the price was lowered to $1,000,000, and that he acquired title from the Trustee to the vacant parcel 112.84-3-4. On November 20, 2023 he presented a proposed contract in this regard. This proposed contract called for a warranty deed, was rejected by the City.

17. Subsequently, Mulinino orally reduced his offer to $600,000 (half of his original offer), which was unacceptable to the City. On January 9, 2024 the City countered with a $762,000 offer with all the restrictions including "as is where is", "no inspections" "quit-claim deed only" and subject to the approval by the City Council and the Bankruptcy Court. Mulinio accepted. Realtor Herr justified this reduction in price due to the additional restrictions placed on the sale by Morrissey on behalf of the City as well as the two vacant parcels not being included. Neither the Trustee nor the equity holders or their attorneys were advised of the $428,000 reduction in price in the agreed upon by City and Mulinio.

18. On January 18, 2024 the Contract was presented to the City Council which approved it.

19. The Corporation Counsel memorandum recommending approval stated that the offer "represents a cash deal which covers most of the City's tax and other losses (including the realtor's commission) without any deed warranties whatsoever" It makes no mention of the bankruptcy Trustee's or equity holders' interests. At the time of the Council approval none of these stakeholders or their attorneys were advised of the proposed contract and $428,000 reduction in price.

20. On January 19, 2024 Attorney Christenson became aware of the Contract, having been advised by his client who saw a report of it in the Troy Record newspaper. On January 22, 2024, he spoke by telephone with the City's bankruptcy counsel Edward Marinstein and voiced his objections to the dramatic reduction in price, stating that the Contract only benefited the City and not the Trustee and equity holder interests; and was not in accord with the Bankruptcy Court Order and recent US Supreme Court decisions.

21. On February 24, 2024, The City commenced an "in rem" foreclosure on the two remaining vacant parcels (.77 acres) originally returnable June 21, 2024 and then adjourned to August 14, 2024. Although redeemed in the prior proceeding, all real property taxes had been unpaid and delinquent since 2019.

22. On April 29, 2024, the City's Bankruptcy Counsel filed a motion to approve the Contract returnable May 29, 2024. Opposition papers were filed by Sahag Sukljian by his Attorney Terrance Christenson on May 21,2024, and Reply papers were filed on May 24, 2024.

23. No opposition was made to the "in rem" foreclosure proceeding the two vacant parcels, and no redemption occurred, and, on December 18, 2024, a foreclosure order was granted and a deed to the City was made and recorded on that date.

24. The City now has title to all six parcels. In addition, title to the first four parcels obtained on March 23, 2023 is now, pursuant to NY Real Property Tax Law § 1137 (2-year statute), <u>conclusively</u> presumptively deemed regular and in accordance with all provisions of law relating thereto, and cannot be legally challenged. This resolves any title issues with respect to these parcels.

25. The US Supreme Court decision *Tyler v. Hennepin County* 598 U.S. 631; 143 S. Ct. 1369 decided May 25, 2023 protects equity holders' rights in "in rem" foreclosures.

26. On in April 20, 2024 (after the City Council approved the sale on January 18, 2024in response to the holding of *Tyler*, New York State passed Real Property Tax Law Article 11, Title 6, retroactively effective to May 25, 2023. It codifies *Tyler* and protects the rights of equity holders in "in rem" foreclosures.

27. *Gunsalas v. County of Ontario* 37 F 4th 859 (cert denied by the US Supreme Court on November 21, 2022. Docket No 22-294) also applies. That decision involving a

New York "in rem" foreclosure sale applied the bankruptcy law requirements under Section 548 and its "reasonably equivalent value" standard, and held the debtor's bankruptcy estate to be entitled to surplus proceeds received by the foreclosing municipality.

28. The Supreme Court decisions and NY statute preempt any inconsistent Local laws or Ordinances.

So Stipulated:

Dated: May 21, 2025

Marinstein & Marinstein, Esqs PLLC

By: _____
Edward R. Marinstein, Esq

Attorneys for Moving Party City of Troy
Office & PO Address
22 First Street – PO Box 155
Troy, New York 12181-0155
Telephone: (518) 274-5034

Dated: May 21, 2025

Cooper Erving & Savage LLP

By: _____
Terrance P. Christenson, Esq

Attorneys for Objecting Party Sahag Sukljian
Office & PO Address
20 Corporate Woods Blvd - Suite 501
Albany, New York 12211
Telephone: (518) 449-3900 -Ext 125